IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERALDA C. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 463 |
| v. | ) | |
| | ) | Magistrate Judge |
| MICHAEL J. ASTRUE, | ) | Maria Valdez |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Geralda Morgan's claim for Disability Insurance and Supplemental Security Income Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Morgan's motion for summary judgment [Doc. No. 19] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is granted.

## BACKGROUND

### I.     PROCEDURAL HISTORY

Morgan originally applied for Supplemental Security Income Benefits on November 30, 2006 and for Disability and Disability Insurance Benefits on December 13, 2006, alleging in both applications a disability since January 30, 2006. (R. 11, 135-50.) The applications were denied on June 8, 2007 and upon

reconsideration on February 29, 2008. (R. 11, 73-76.) Morgan filed a timely request for a hearing by an Administrative Law Judge ("ALJ"), which was held on September 9, 2009. (R. 11, 24-72, 99-103.) Morgan personally appeared and testified at the hearing and was represented by counsel. (R. 11, 24-72.) A vocational expert also appeared at the hearing. (*Id.*)

On November 9, 2009, the ALJ denied Morgan's claim for benefits and found her not disabled under the Social Security Act. (R. 18-19.) The Social Security Administration Appeals Council denied Morgan's request for review on November 16, 2010, (R. 1-5), leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.   FACTUAL BACKGROUND

### A.   <u>Background</u>

Morgan was born on May 31, 1961, and at the time of the ALJ hearing, she was forty-eight years old. (R. 28-29.) She was five foot three inches tall and weighed 133 pounds. (R. 721.) She graduated high school and completed some coursework at Robert Morris College for about a year and a half. (R. 29.) She is married but does not live with her husband; her fourteen year-old daughter lives with her. (*Id.*) She was previously employed as a customer service representative at AT&T and as a collections agent (R. 31, 33-34, 162-65.) Morgan claims disability beginning January 30, 2006 due to bilateral hallux valgus, carpal tunnel syndrome, depression, and recto-vaginal fistula.

B. **Testimony and Medical Evidence**

*1. Morgan's Testimony*

Morgan testified that she had a partial hysterectomy in 2004, after which she continued to have pain and bleeding. (R. 35.) She nevertheless went back to work. (*Id.*) Then in January 2006, while she happened to be in the hospital after taking her daughter there, Plaintiff passed out, and emergency surgery was performed. (R. 34-35.) She suffered a ruptured blood clot in her ovary, and the ovary, appendix, a portion of the colon, and an abscess were removed. (R. 35.) Morgan stated that while closing her up after surgery, a doctor tore a hole between her rectum and vagina. After returning home, she noticed feces coming through her vagina. (R. 36.) She was later diagnosed with recto-vaginal fistula. (*Id.*) She has had numerous procedures to correct the problem, and she thought it was finally resolved after a surgery in June 2009. (*Id.*) However, in the two weeks prior to the hearing in September 2009, Morgan noticed some residue and was back to wearing pads. (*Id.*) While at home, Morgan often uses a hospital commode set up in her room, but she also needed to change pads or diapers four or five times a day, which takes five to ten minutes each time. (R. 52.) Morgan testified that she does not want to go to work with the discharge because it is "gross" and "smelly." (R. 41.) The fistula can also cause infection, which in turn causes back pain and cramping. (R. 50.)

In addition to her recto-vaginal fistula, she has had problems with her feet requiring twelve surgeries (R. 37), and bilateral carpal tunnel, also requiring

3

surgery, (R. 41-42). She has had a total of thirty-nine surgeries for problems in her hands, feet, breasts, and relating to the hysterectomy and fistula. (R. 37.)

During the day, Morgan is often alone but an older daughter occasionally comes over. (R. 44.) She does not prepare her own food; she relies on her daughters to bring food to her in her room. (R. 44-45.) Plaintiff testified that she is in bed much of the time due to pain in her feet and hands. (R. 45-46.)

### 2. *Medical Evidence*[1]

On May 2, 2007, Dr. Mahesh Shah performed an internal medicine consultative examination. (R. 720.) Dr. Shah described Morgan's laparotomy in January 2006 for a ruptured appendix and ruptured left ovarian cyst and post-operative development of a recto-vaginal fistula. (R. 721.) Plaintiff reported to Dr. Shah that the leakage was "slowly decreasing and the odor is also diminishing," and Dr. Shah noted that the fistula was being monitored. (*Id.*)

Dr. Herman Langner performed a psychiatric evaluation on May 2, 2007. (R. 715.) Morgan reported to him that she suffers from multiple physical problems causing great stress and secondarily depression; she did not have depression prior to the onset of her physical problems. (*Id.*) She was taking Bupropion and Wellbutrin for depression. (R. 716.) In relation to "Daily Activities," Dr. Langner noted: "She does what she can to keep busy. She indicates that she is extremely restricted because of her various physical conditions." (*Id.*) During the examination,

---

[1] Plaintiff's medical history related to physical conditions, such as carpal tunnel and foot problems, which are not at issue in this appeal, has been omitted.

4

she was tearful and presented with a flat affect. (*Id.*) Dr. Langner diagnosed Morgan with depression NOS and gave her a Global Assessment of Functioning ("GAF") score of 40-45. (R. 717.)

Dr. Jose Cintron, a colo-rectal surgeon, noted in May 2007 that the clinic had been following her progress "and even brought her to the operating room on September 26, 2006 for an exam under anesthesia which was relatively unremarkable at that time and we could not find any rectovaginal fistula at the time." (R. 788.) He continued that "[s]ince the patient was last seen in January 29, 2007, the character of what she states is her drainage has actually decreased in quantity as well as in its consistency." (*Id.*) At January 29, 2007 visit, Morgan reported that her symptoms were not completely gone but had improved with less frequency of drainage. (R. 789.)

On May 23, 2007, Dr. Tyrone Hollerauer, a DDS consultant, concluded that Morgan's mental impairment, *i.e.*, depression NOS secondary to general medical condition, was not severe. (R. 725, 728.) Under the paragraph B criteria, he found no restrictions in her activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. 735.)

An RFC assessment completed by DDS consultant Dr. Frank Jimenez on May 25, 2007 concluded that Morgan could lift twenty pounds occasionally and ten pounds frequently, stand and/or walk and/or sit for about six hours in an eight-hour workday, with pushing and pulling limited to the lower extremities and other

5

postural and manipulative limitations. (R. 740-42.) With regard to her fistula, Dr. Jimenez noted that Morgan had mild symptoms, "but work-ups have been repeat[e]dly negative. She is being monitored." (R. 746.)

June 29, 2007 progress notes from Dr. Pratap Marri, Morgan's Holy Cross Hospital treating physician, stated that her understanding, memory, sustained concentration, persistence, social interaction, and adaptation are normal; no abnormal functional areas were described. (R. 750.)

A June 24, 2009 discharge summary from Roseland Hospital stated that the fistula recurred following a March 11, 2009, procedure to repair it. (R. 910.) An open laparotomy with repair of recto-vaginal fistula and lysis of adhesions was performed on June 10, 2009, and Morgan had an improved condition on discharge. (R. 911, 915-16.) After saline dye testing on June 27, 2009, the surgeon concluded that there was no evidence of recurrent recto-vaginal fistula. (R. 913.)

On September 30, 2009, Dr. Clara Perez performed a psychiatric evaluation of Morgan. (R. 929-32.) Dr. Perez diagnosed Plaintiff with post-traumatic stress disorder and gave her a GAF score of 50. (R. 931.)

### 3. *Vocational Expert's Testimony*

Glee Ann Kerr testified as the vocational expert ("VE"). (R. 64.) The VE testified that a person with greater than a high school education, limited to lifting no more than twenty pounds occasionally and ten pounds frequently; further limited to standing or walking less than two hours in an eight-hour workday; unable to perform work requiring repetitive and prolonged handling and

6

manipulation; no exposure to pollutants, temperature extremes, or wet environments; and no exposure to hazardous or moving machinery would be able to perform Morgan's past relevant work as a collections agent. (R. 66-67.) The VE testified that in such a semi-skilled occupation, no more than two absences per month (on average) would be allowed, and she would need to remain on-task for 85% of work time to remain employed. (R. 68-69.)

C. **ALJ Decision**

The ALJ found that Morgan had not engaged in substantial gainful employment since the alleged onset date of January 30, 2006. (R. 13.) At step 2, the ALJ concluded that Morgan had severe impairments of hallux valgus bilateral and carpal tunnel syndrome on right with status post-surgical repair but that her medically determinable mental impairment of depression did not cause more than a minimal limitation in her ability to perform basic mental work activities and was not severe. (R. 13.) At step 3, the ALJ found that none of Morgan's impairments, alone or in combination, met or equaled a Listing. (R. 14.)

The ALJ next determined that Morgan had the Residual Functional Capacity ("RFC") to perform light work, subject to the following limitations: no standing or walking for more than two hours in an eight-hour workday; no repetitive or prolonged handling and manipulation; no exposure to airborne pollutants, extremes of temperatures, or wet environments; and no exposure to hazards or moving machinery. (R. 15.) The ALJ then concluded that Morgan could perform her past

7

relevant work as a collections clerk and was thus not disabled under the Social Security Act. (R. 18.)

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42. U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are support by substantial evidence or based upon legal error. *Clifford v. Apfel,* 227 F.3d. 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 498 F.3d 630, 634

(7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Morgan argues that the ALJ's decision was in error because: (1) he improperly evaluated her credibility in relation to her complaints associated with recto-vaginal fistula; (2) his finding that Morgan's depression is not a severe impairment was not supported by substantial evidence; and (3) the RFC evaluation failed to consider the symptoms and treatment of her recto-vaginal fistula.

### A. <u>Credibility</u>

In evaluating her alleged symptoms of recto-vaginal fistula, the ALJ described her surgeries in January 2006 and June 2009 as well as tests and progress reports dated January 29, 2007, May 27, 2007, and November 19, 2007. He concluded that the medical evidence demonstrated she suffered no limitations other than those incorporated in the RFC and found her claims of recent symptoms not to be credible.

Morgan claims that the ALJ's decision was deficient because it described only two recto-vaginal surgeries, but she had at least four major pelvic surgeries as well as numerous hospital admissions and doctor visits. She further argues that the ALJ improperly failed to credit her testimony that her symptoms, including fecal discharge, returned after her June 8, 2009 surgery.

An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, an ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez* ex rel. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88).

First, Morgan cites to no authority requiring an ALJ to describe all treatment and surgery. *See Zurawski*, 245 F.3d at 889 (holding that an ALJ is not obligated to discuss all evidence in the record). Moreover, she admits that the ALJ discussed her most recent surgery and discharge report, which indicated improvement. Morgan does not explain why a discussion of surgeries predating the June 2009 procedure would support her claims of disability.

Second, the ALJ's credibility finding was specific, it was not patently wrong, and it will not be disturbed by this Court. While the ALJ's credibility determination

11

relied in part on the language sharply criticized by the Seventh Circuit in *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), the decision went beyond the boilerplate by noting that her allegations of recent leakage were not supported by any medical evidence. The lack of objective evidence is not by itself reason to find Morgan's testimony to be incredible, *see Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005), but Morgan has not shown that the ALJ was unreasonable in giving greater weight to the medical evidence, which failed to support her objective complaints of recent leakage, than it did to her testimony.

### B. Depression

Morgan next faults the ALJ's finding that her depression was not a severe impairment. She points to two reports, one of which diagnosed her with major depression, and another with post-traumatic stress disorder. Both reports assess Morgan's GAF score in a range indicating serious impairments in social and/or occupational functioning. Morgan further argues that the ALJ disregarded the problems she described at the hearing and during psychiatric consultative examinations, such as extreme embarrassment and stress related to her fistula.

In finding that Morgan's depression was not severe, the ALJ considered the four functional areas set out in the regulations for evaluating mental disorders, otherwise known as the "paragraph B" criteria. The ALJ found that Morgan had no limitation in the first functional area (activities of daily living), mild limitations in the second and third areas (social functioning and concentration, persistence, or pace), and in the fourth area, he found no episodes of decompensation. *See* 20 C.F.R.

§ 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

Morgan recites the ALJ's analysis of the four areas but does not detail any particular errors allegedly made by the ALJ. Morgan suggests that the ALJ incorrectly found that Morgan had no limitations in the first functional area, activities of daily living. Plaintiff testified that she stayed in bed much of the day and that relatives cooked for her. The ALJ's finding of no limitation was based on her May 2007 report to a psychiatrist that she "tries to keep busy during the day." (R. 14.)

The Commissioner responds that Morgan's May 2007 statement indicated that she was "extremely restricted because of her various physical conditions," (R. 716), not due to any mental impairments. The regulations specify that the paragraph B criteria relate to the extent to which the claimant's mental impairment interferes with daily functioning; physical limitations are not part of this assessment. (*See* 20 C.F.R. § 404.1520a(c)(2).) Furthermore, the ALJ's decision also discussed the reports of DDS reviewing physicians, who confirmed that Morgan had no limitations on her activities of daily living. Morgan does not dispute these evaluations or the Commissioner's arguments.

13

Morgan next complains that the ALJ improperly played doctor by disregarding the GAF scores given by two examining psychiatrists (45 and 50). The Commissioner acknowledges that a score of 41-50 generally indicates serious symptoms. (Def.'s Mem. at 8.) However, the Commissioner also points out that GAF scores measure both the severity of symptoms and functional level, and "[b]ecause the final GAF rating always reflects the worse of the two, the score does not reflect the clinician's opinion of functional capacity. Accordingly, nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (internal quotations and citations omitted). The only reports in the record of Plaintiff's mental impairment as it relates to her ability to perform work found no limitations on her activities of daily living. Morgan has offered no contrary psychiatric assessment of her ability to perform work-related activities. The Court therefore finds that the ALJ sufficiently articulated the reasons supporting his conclusions that Morgan's depression is not a severe impairment.

### B.     Incomplete RFC Analysis

Finally, Morgan takes issue with the ALJ's finding that she had the RFC to perform light work with certain limitations. Morgan claims that the ALJ did not properly consider her recto-vaginal fistula, as well as its symptoms and treatment, in determining her RFC. Specifically, Morgan describes the "countless references to the Plaintiff's severe and embarrassing symptoms of feces and gas entering her

14

vagina and the foul odor it causes" and the effect the foul odor would have on the workplace. (Pl.'s Mem. at 10-11.) She also criticizes the ALJ for not taking into consideration the effect on her productivity of four or five daily diaper changes at five to ten minutes per change. According to Morgan, if her diaper changes were factored in, she would not be on task the 85% of the time the VE testified would be required. Morgan also argues that if her numerous surgeries and hospitalizations were considered, she would miss more than the maximum number of two absences a month.

  First, as discussed above, the ALJ was reasonable in concluding that Plaintiff's claims of unresolved fecal discharge are not supported in the record. Therefore, he was not required to consider the effect of the foul odor on the workplace. Moreover, the past employment he found Morgan was capable of performing was work as a collections clerk, which would not require interacting with the public.

  Second, as the Commissioner points out, even if five diaper changes took place during non-break time in the work day, as opposed to her waking day, and each change took the maximum ten minutes, Morgan would be off-task for fifty minutes, more than twenty minutes less than 15% of a 480-minute workday. Accordingly, any error in not expressly discussing Morgan's diaper changes was harmless.

  Finally, Morgan's claim that she will require future absences is based solely upon her tortured history of surgeries and treatments for her various physical

ailments. But there is no evidence in the record that any additional surgery is presently expected, let alone treatments that will require absences of more than two days per month. Morgan testified that as of the date of the hearing, she had no surgeries scheduled. (R. 38-39.) She has offered no case law or regulation supporting her conclusion that hypothetical absences should have been included in the RFC determination. The Court concludes that the ALJ's RFC finding was adequately supported in the record.

## CONCLUSION

For the foregoing reasons, Plaintiff Geralda Morgan's motion for summary judgment [Doc. No. 19] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is granted.

**SO ORDERED.**            **ENTERED:**

**DATE:  June 4, 2012**

                                                 **HON. MARIA VALDEZ**
                                                 **United States Magistrate Judge**